IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THOMAS W.,[1]<br><br>        Plaintiff,<br>  v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | Case No.: 6:23-cv-00645-AN<br><br>OPINION AND ORDER |

       Thomas W. ("Plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

## BACKGROUND

### I.    Plaintiff's Application

      Plaintiff was born on May 1, 1990, making him 26 years old on his alleged onset date of January 1, 2017. Tr. 84. Plaintiff has a high school education and has past relevant work as a cook, a pool manager, and extruder operator. Tr. 38. In his applications, Plaintiff alleges disability due to major depressive disorder, anxiety, obsessive compulsive disorder ("OCD"), bipolar disorder, back issues, and back pain. Tr. 84, 233.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

The Commissioner denied Plaintiff's application initially and upon reconsideration. Tr. 91-92, 101. On December 1, 2021, Plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") John W. Rolph. Tr. 46-82. Prior to the hearing, Plaintiff amended his alleged onset date to January 31, 2020. Tr. 292. On December 29, 2021, the ALJ issued a written opinion, finding Plaintiff not disabled. Tr. 15-40. The Appeals Council denied review. Tr. 1. Plaintiff now seeks judicial review of the ALJ's final decision.

## II.      Sequential Disability and DAA Analysis

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a).

Where alcohol or drug abuse are implicated in a disability proceeding, the ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th Cir. 2001). If the ALJ finds the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the Drug and Alcohol Abuse Analysis ("DAA analysis") under 20 C.F.R §§ 404.1535 or 416.935. *Id*.

However, if the ALJ finds the claimant is disabled and there is medical evidence of the claimant's drug addiction or alcoholism, then the ALJ should then determine if the claimant would still be found disabled if the claimant stopped using alcohol or drugs. *Id*. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Asture,* 481 F.3d 742, 747-48 (9th Cir. 2007). At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date, January 31, 2020. Tr. 18. At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: bipolar I disorder, major depressive disorder, anxiety, attention-deficit hyperactivity disorder ("ADHD"), substance-induced psychosis with delusions, acute psychosis disorder, adjustment disorder, cannabis use disorder, inhalant use disorder, chronic low back pain, and left shoulder rotator cuff tendinosis with pain. *Id.* At step three, because alcohol and drug abuse were implicated in this disability proceeding, the ALJ first conducted the five-step

inquiry without separating out the impact of alcoholism or drug addiction. The ALJ determined that, including Plaintiff's substance use, Plaintiff's impairments met or medically equaled the severity of a listed impairment. Tr. 19-23. The ALJ then stopped the five-step inquiry and proceeded with the DAA analysis to determine if alcohol and drug abuse was a contributing factor material to the determination of disability. Tr. 23. The ALJ found that if the claimant stopped their substance use, the remaining limitations would cause more than minimal impact on the claimant's ability to perform basic work activities and therefore, Plaintiff would have a severe impairment or combination of impairments. *Id*. However, the ALJ ultimately found that if Plaintiff stopped his substance abuse, he would not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment. *Id*. The ALJ then concluded that if Plaintiff stopped their substance abuse, they would have the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> He can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk six hours in an eight-hour day. He can sit six hours in an eight-hour day. He can never climb ladders, ropes, and scaffolds. He may occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. With his left upper extremity, he may occasionally reach overhead, and may frequently reach in all other directions. He must avoid more than occasional exposure to extreme cold, vibration, and hazards such as dangerous moving machinery and unsecured heights. He can learn, remember, and perform simple, routine, and repetitive work tasks, involving short and simple work instructions, which are performed in a routine, predictable, and low stress work environment (defined as one in which there are no rapid production pace work tasks or high quota requirements, few workplace changes, and no close or intense personal supervision). He can attend, concentrate, and maintain pace for two hours at a time with normal breaks. He may have occasional and superficial contact with coworkers. He may have minimal and superficial contact with the public.

Tr. 26. At step four, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 37.

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform if he stopped the substance use, such as Cleaner, housekeeping (DOT# 323.687-014), a light level occupation with an SVP of 2 and 380,000 jobs available; Inspecter & hand packager (DOT# 59.687-074), a light level occupation with an SVP of 2 and 130,000 jobs available; and Assembler, small products (DOT# 706.684-022), a light level occupation with an SVP of 2 and 220,000 jobs available. Tr. 38-39. Therefore, the ALJ concluded that Plaintiff is not disabled if he stopped the substance use, and that because the substance use disorder is a contributing factor material to the determination of disability, Plaintiff is not disabled. Tr. 39.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court "cannot affirm the [ALJ's] decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly evaluating the medical opinions of Roberta Mowdy, PMHNP, Peter Swick, LCSW, Dr. Marc Williams, M.D., and Jennifer Rowton, LCSW; and (2) improperly assessing the lay witness testimony. Specifically, Plaintiff argues that, even in the absence of substance use, the medical opinions and lay witness testimony establish that he would still have extensive work-related mental limitations that would preclude him from working.

### I.     Medical Opinions

Plaintiff alleges that the ALJ failed to properly discount the four medical opinions of Roberta Mowdy, PMHNP, Peter Swick, LCSW, Dr. Marc Williams, M.D., and Jennifer Rowton, LCSW, on the basis of consistency and supportability. Pl.'s Opening Br. 6-12, ECF 14. Each of the aforementioned medical providers produced medical opinions, without the consideration of Plaintiff's substance use, stating that Plaintiff would be unable to complete a normal eight-hour workday and subsequent work week because he would be unable to stay on task. Pl.'s Opening Br. 6-12, ECF 14; Tr. 2266-69, 2270-73, 2274-78, 2279-83.

#### A.     Legal standards

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

    **B.**    **Roberta Mowdy, PMHNP**

Plaintiff first argues that the ALJ improperly discredited Mowdy's opinion

regarding an inability to sustain an ordinary routine without special supervision, inability to complete a normal workday or work week, and that Plaintiff would miss five or more days a week and be off task for 20 percent of a normal workday. The ALJ found that Mowdy's opinion was unpersuasive because it was inconsistent and unsupported by her own treatment notes, and because she provided no explanation for the assessed limitations. Tr. 34.

Mowdy provided a medical opinion on October 18, 2021. Tr. 2269. The report broke down Plaintiff's mental health assessment into four sections: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. Tr. 2266. Each section contained specific abilities and a checkbox for what category it fell under. Tr. 2266-68. The categories for the specific abilities were as follows: Category I does not preclude performance of any aspect of the job; Category II precludes performance for 10 percent of an eight-hour workday; Category III precludes performance for 20 percent of an eight-hour workday; and Category IV precludes performance for 30 percent of a workday. Tr. 2266.

In the report, Mowdy noted that Plaintiff had category III limitations in his ability to sustain an ordinary routine without special supervision and in his ability to complete a normal workday or work week without interruption from his mental health issues. Tr. 2267. Mowdy also noted that Plaintiff would likely miss five or more days of work each month and would be off task 20 percent of an eight-hour workday. Tr. 2269. Notably, Mowdy did not provide a narrative for the assessed limitations but did indicate that the assessment was based on Plaintiff's medical history, treatment notes, and psychological evaluations and reports/opinions. Tr. 2268.

The ALJ discounted Mowdy's medical opinion because her treatment notes are inconsistent with the assessed limitations. Tr. 34. For example, in February 2020, Plaintiff had logical, linear, and goal directed thought content and process, his attention and concentration

were fair, his intellect was average, and his memory was within normal limits. Tr. 325-26. In June, the report was the same, except that his attention and concentration were good rather than fair. Tr. 303, 307-08. Plaintiff's records contained the same assessment in October, as well as January and March 2021. Tr. 921-22, 2193, 2214.

Based on these records, and the Plaintiff's inability to point to any of Mowdy's treatment notes that would support the severe limitations she assessed, the ALJ's rejection of Mowdy's opinion is supported by substantial evidence.

### C.    Peter Swick, LCSW

Plaintiff next argues that the ALJ improperly discredited Swick's opinion, which would have precluded Plaintiff from being able to work. The ALJ found that Swick's opinion was unpersuasive because it was inconsistent with, and unsupported by, his own treatment notes. Tr. 35.

Swick provided a medical opinion in the same form as Mowdy, with four sections for understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 2270. Each section contained specific abilities and a checkbox for what category it fell under. Tr. 2270-72. The categories for the specific abilities were, again, as follows: Category I does not preclude performance of any aspect of the job; Category II precludes performance for 10 percent of an eight-hour workday; Category III precludes performance for 20 percent of an eight-hour workday; and Category IV precludes performance for 30 percent of a workday. Tr. 2270. In his report, Swick noted that Plaintiff had category IV limitations in every ability, in every section. Tr. 2270-72. He also noted that Plaintiff would miss four or more days of work per month, and that he would be off task more than 30 percent for an eight-hour day. Unlike Mowdy, he provided a narrative, stating that Plaintiff has demonstrated a pattern of mania

and clinical depression, that Plaintiff required two hospitalizations for more than 30 days in order to stabilize and return to baseline function, and that he has been treating Plaintiff for at least three years. Tr. 2272-73.

The ALJ discounted Swick's opinion because it was inconsistent with Plaintiff's own admissions surrounding the reasons for his 30-day hospitalizations, and with Swick's own treatment notes. For example, Plaintiff admitted that the first 30-day hospitalization mentioned in Swick's opinion happened in 2018 and was due to drug use. Tr. 68, 358, 695, 1491, 1543, 1564. Swick, however, attributed that hospitalization to only his mental health. Tr. 2273. Before Plaintiff's second hospitalization, in June 2020, Plaintiff was put under a psychiatric hold due to suspected drug use. Tr. 702-26. Plaintiff admitted to nitrous oxide abuse as the reason for his erratic behavior. Tr. 709. And even though Plaintiff made two out of place statements about being a millionaire secondary to investment in a pot farm and that he had a two trillion-dollar deal lined up that fell through, the treating physician noted that besides those two statements, Plaintiff was "perfectly linear logical and goal-directed without evidence of psychosis." *Id*. In July, Plaintiff was incarcerated and placed under mental health observation, where it was noted that Plaintiff's use of Adderall in June contributed to his manic and psychotic episodes. Tr. 576. Swick completed a mental status examination in September while Plaintiff was still incarcerated, and noted that Plaintiff had abnormal results, such as having delusional and disorganized thought content and tenuous contact with reality. Tr. 947. However, at the time, Plaintiff was still incarcerated and going through recovery. Notably, Swick declined to attribute any of Plaintiff's behavior to substance abuse, going so far as to state that substance abuse was not supported by evidence, observation, or opinion of other providers, despite Plaintiff's admissions, the views of other treating physicians, and their clinical observations. Tr. 576, 711, 941-42, 2257. Post

incarceration, on the rare occasion that Swick provided clinical observations, Swick's notes show that Plaintiff was cooperative or friendly, had average intellect, good attention and concentration, and coherent, logical, linear, and goal directed thought content. Tr. 904-05, 921-22, 2116-17, 2121.

Given the inconsistencies between Swick's notes, his medical opinion, and with Plaintiff's own admissions, the ALJ's rejection of Swick's opinion is supported by substantial evidence.

### D.    Marc Williams, M.D.

Plaintiff's third challenge is that the ALJ improperly discredited Dr. Marc Williams' opinion showing that Plaintiff had severe limitations in the category of sustained concentration and persistence. The ALJ found that Dr. Williams' opinion was unpersuasive because it was inconsistent with, and unsupported by, his own treatment notes and other medical records in evidence. Tr. 35.

Like Swick and Mowdy, Dr. Williams filled out the same mental health function form. Tr. 2275-78. In his report, Dr. Williams opined that Plaintiff would have category IV 30 percent off task limitations in only one category, sustained concentration and persistence. Tr. 2276. According to Dr. Williams, Plaintiff had severe limitations in his ability to carry out detailed instructions, ability to maintain attention and concentration in 2-hour segments, ability to perform activities within a schedule and maintain regular attendance, and in his ability to sustain an ordinary routine without special supervision. *Id*. Dr. Williams based his opinion on Plaintiff's medical history and his own treatment notes. Tr. 2277. Dr. Williams also noted that he has never seen Plaintiff in person and that his ability to gauge Plaintiff's baseline level of disability was limited. Tr. 2278. He further stated that he believed Plaintiff has chronic problems

with attention, concentration and sustained focus, as well as episodic illness where he is severely impaired. Tr. 2278.

Dr. Williams' records, however, offer a different picture. In a report from March 2021, Dr. Williams noted that Plaintiff's thought content was linear and logical with no psychotic symptoms, and that there was an impression that Plaintiff was "mostly interested in medication that had some type of abuse potential." Tr. 2223. Dr. Williams also acknowledged that Plaintiff's episodes of mania and psychosis were precipitated by a stimulant and that there may have been other substances being used that were unreported. *Id*. In a report from April, Dr. Williams noted that Plaintiff's current diagnosis "is trending towards a drug-induced psychosis or a drug-induced mania with psychotic features and possibly spectrum bipolar diagnosis with primarily depressive features," and that he "[d]oubted ADHD as a diagnosis." Tr. 2234. Subsequent reports from May, June, July, and September show that Plaintiff's mental status was unchanged, with linear and logical thought content and no signs of psychotic symptoms. Tr. 2238, 2243, 2249, 2263.

Given the above, the ALJ's rejection of Dr. Williams' opinion based on his own treatment notes and other medical evidence in the record is supported by substantial evidence.

### E.    Jennifer Rowton, LCSW

Plaintiff's last challenge is that the ALJ improperly discredited Jennifer Rowton's opinion showing that Plaintiff had severe limitations in all four categories of a mental health functionality assessment. The ALJ found that Rowton's opinion was unpersuasive because it was inconsistent with, and unsupported by, her own treatment notes and other medical records in evidence. Tr. 36.

Like the other medical professionals above, Rowton provided a mental health

function report. Tr. 2280-83. In it, she opined that Plaintiff would be unable to perform certain work activities for 20 to 30 percent of an eight-hour workday. Tr. 2280-82. These activities include an ability to understand and remember very short and simple instructions, ability to understand and remember detailed instructions, ability to carry out short and simple or detailed instructions, ability to concentrate for 2-hour segments, ability to sustain an ordinary routine, ability to perform activities within a schedule and maintain regular attendance, ability to complete a normal workday or work week, ability to make simple work-related decisions, ability to work in proximity to others, ability to interact appropriately with the public, ability to ask simple questions or request help, ability to accept instructions and respond appropriately to criticism, ability to get along with others, and ability to travel in unfamiliar places or use public transportation, among others. *Id*. In support of her findings, Rowton noted that her opinion was based on Plaintiff's medical history, psychological evaluations, and her treatment notes. Rowton also noted that Plaintiff would be absent five or more days a month, and that he would be off task 30 percent or more in an eight-hour day. Tr. 2282-83.

Rowton's records, however, show that Plaintiff was normally engaged and an active participant in his therapy with no indication that he would have the severe problems presented in Rowton's medical opinion. Tr. 2226, 2228-30, 2232, 2235-36, 2239, 2241-42, 2245, 2250. As for psychological evaluations, Rowton conducted a single evaluation in August 2021, in which she stated Plaintiff was friendly with normal speech and behavior, normal thought content, normal memory, and average intellect. Tr. 2257-58. As in the rest of her treatment notes, however, while there is some indication Plaintiff has trouble concentrating, there were no observations or tests that would reflect the severe limitations in Rowton's opinion.

As such, the ALJ's rejection of Rowton's medical opinion based on inconsistency

and a lack of supporting evidence by both her treatment notes and the overall medical record, is supported by substantial evidence.

### F. Summary

The ALJ's rejection of the medical opinions from Roberta Mowdy, Peter Swick, Dr. Marc Williams, and Jennifer Rowton based on inconsistencies and a lack of supportability with their own treatment notes and other medical evidence in the record was supported by substantial evidence. Furthermore, Plaintiff's records showing mostly normal findings in the absence of substance abuse reinforce the ALJ's finding that substance use was a material factor in Plaintiff's disability determination.

## II. Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to properly address the lay witness testimony provided by Plaintiff's mother by failing to provide reasons germane to the witness. Pl.'s Opening Br. 14-15, ECF 14.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

In the third-party report, Plaintiff's mother stated that Plaintiff suffers major

depressive disorder, bipolar disorder, agoraphobia, obsessive compulsive symptoms, memory loss, anxiety, and low self-esteem. Tr. 242. She stated that Plaintiff spends most of his time in his room playing video games and occasionally watching movies, and that he has difficulty staying focused. Tr. 243. She further explained that Plaintiff has become more isolated, that he does not sleep well, that he needs reminders for his grooming and medication, that he lacks energy, and that he has difficulty retaining information. Tr. 243-47.

The Commissioner argues that the ALJ discounted the lay witness testimony because it was inconsistent with Plaintiff's medical records, and this court agrees. Def.'s Br. 17-20, ECF 16; Tr. 24-25. For example, in understanding, remembering, or applying information, the ALJ contrasted the lay witness testimony with reports that Plaintiff had average intellect and intact memory on mental status examinations. Tr. 24, citing Tr. 325-53, 307-08, 921-22, 2193, 2214. The lay witness testimony stated Plaintiff no longer participated in social activities, but it also stated that he had no trouble getting along with family, friends, neighbors, and that he got along "okay" with authority figures. Tr. 247-48. The ALJ noted that Plaintiff's records showed he was cooperative, friendly, and engaged. Tr. 25, citing Tr. 307-08, 312, 325-27, 915, 921-22, 2193, 2211, 2214. Plaintiff's mother opined that Plaintiff had difficulties concentrating and paying attention, yet the ALJ noted that Plaintiff's records reflect that fair to good attention and concentration, along with normal thought content and processes. Tr. 25, citing Tr. 247, 307-08, 325-26, 921-22, 2193, 2214, 2249, 2263.

Because the ALJ rejected the lay witness testimony because it was inconsistent with Plaintiff's medical records, the ALJ provided a reason germane to the witness, and therefore the ALJ has not erred.

**III.    RFC Determination**

Finally, Plaintiff asserts that the ALJ erred by failing to include limitations contained in the discounted medical opinion evidence and the lay witness testimony in the hypotheticals posed to the vocational expert. Pl.'s Opening Br. 14, ECF 14. Plaintiff, however, is incorrect. The ALJ is not required to account for symptoms and limitations in the RFC that have been properly rejected. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (affirming the ALJ's RFC determination where "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints"); *Jon M. v. Comm'r, Soc. Sec. Admin.*, No. 3:22-CV-00207-HZ, 2023 WL 2932009, at *6 (D. Or. Apr. 12, 2023) ("The ALJ did not include all of the limitations set out in Plaintiff's testimony, however, the Court has concluded the ALJ did not err when he partially rejected Plaintiff's testimony. Accordingly, the Court concludes the ALJ did not err when he did not conduct a 'function-by-function assessment' of Plaintiff's RFC.")

Accordingly, because the ALJ did not err in discounting the lay witness testimony and the medical opinion evidence, the ALJ did not err by not including those limitations in the Plaintiff's RFC.

## CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 3rd day of May, 2024.

Adrienne Nelson
United States District Judge